UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CARLOS ENRIQUE GUTIERREZ,                              CIVIL NO. 04-2627 (JRT/JSM)

       Plaintiff,

v.                                                    REPORT AND RECOMMENDATION

DR. JAMES GUNDERSON, M.D.D.,
DR. SANTINI, M.D., and
MIKE STALKER,

       Defendants.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on before the undersigned upon defendant Santini's and Stalka's Motion to Dismiss/Motion for Summary Judgment [Docket No. 15]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons discussed below, **IT IS RECOMMENDED** that this case be dismissed without prejudice, unless Gutierrez files within fourteen (14) days from the date of the Court's Order adopting this Report and Recommendation, an amended petition to state only claims against defendant Dr. George Santini.

## I.     FACTUAL BACKGROUND

Plaintiff Carlos Enrique Gutierrez ("Gutierrez") is currently a prisoner at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"). Compl. III.A. He is serving a sentence imposed by United States District Court Judge James Rosenbaum on November 19, 1998. Declaration of Angela Buege ("Buege Decl."), Attach. A. He has brought this suit

against Dr. James Gunderson, a contract dentist at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"), Dr. George Santini ("Santini"), the Clinical Director of the Medical Department at FCI-Sandstone, and Michael Stalka ("Stalka"),[1] a Unit Counselor at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester").[2]  Compl. III.B.

On October 4, 2001, Dr. Gunderson performed a tooth extraction on Gutierrez.  Compl. IV, ¶ 5; see Santini Decl., at ¶ 4; Attach. A, at 0000007.   During the extraction, Gutierrez experienced profuse bleeding.  Compl. IV, ¶ 7.   After the extraction was completed, Dr. Gunderson provided Gutierrez with extra gauze and discharged him to his assigned housing unit.  Compl. IV, ¶ 13.

By the morning of October 5, 2001, Gutierrez had become ill and was taken to see Dr. Santini in the prison's clinic.  Compl. IV, ¶¶ 15-17; see Santini Decl., at ¶5; Attach. B, at 0000001.  After evaluation at the prison clinic by Santini, Gutierrez was rushed to St. Mary's Hospital in Duluth because Santini assessed Gutierrez as having an acute gastrointestinal bleed.  Compl. IV, ¶¶ 18-19; see Santini Decl., at ¶5; Attach. B, at 0000001.

While at St. Mary's Hospital, Gutierrez was transferred from the emergency room to the Critical Care Unit where he remained from October 6, 2001 to October 11, 2001. See Santini Decl., at ¶ 7; Attach. B, at 0000016-0000018.  On October 12, 2001 he was sent to FMC-Rochester.  During his initial medical assessment at FMC-Rochester, it was noted that he was stable.  See Santini Decl., at ¶ 9; Attach. B, at 0000019-0000025.  On October 24, 2001,

---

[1]     Plaintiff refers to Michael Stalka as "Stalker."  As indicated in Michael Stalka's Declaration, the proper spelling of his surname is "Stalka."  Stalka Dec. ¶ 1.

[2]     Defendant Dr. James Gunderson is not included in defendants' Motion to Dismiss/Motion for Summary Judgment.  As a former contract dentist at FCI-Sandstone, Dr. Gunderson is not a federal employee and therefore the Government is not representing him in this matter.  In addition, according to the Government, he has not been served in this matter.

Gutierrez was discharged from the inpatient hospital unit at FMC-Rochester in stable condition and sent to the Medical/Surgical Unit at FMC-Rochester.  See Santini Decl., at ¶10; Attach. B, at 0000026 -0000028.

Gutierrez alleges that when he was able and mobile, he filed for an administrative grievance, but that Stalka obstructed his complaint from being filed by rejecting Gutierrez's request for an informal resolution.  Compl. IV, ¶ 32.  The evidence presented to the Court regarding Stalka indicates that Gutierrez first submitted an administrative remedy request regarding his medical treatment on May 3, 2002.  Reply to Defendants' Memorandum of Law of in Support of Motion to Dismiss/Motion for Summary Judgment, ("Plaintiff's Reply"), Ex. A (April 20, 2002 Request for Administrative Remedy, May 3, 2002 Rejection Notice); Buege Decl. ¶ 6, Attach. B.  The same day, Stalka denied the complaint stating that it was not received within 20 days of the event that led to the complaint.  Compl. IV, ¶ 33; Plaintiff's Reply, Ex. A (May 3, 2002 Rejection Notice). Gutierrez then presented an administrative remedy request to the regional office on May 21, 2002, and to the central office on July 30, 2002.  Plaintiff's Reply, Ex. A (May 14, 2002 Regional Administrative Remedy Appeal, May 30, 2002 Rejection Notice, July 22, 2002 Central Office Administrative Remedy Appeal, July 31, 2002 Rejection Notice); Buege Decl. ¶ 6, Attach. B.  All of Gutierrez's administrative remedy attempts were denied as untimely filed.  Compl. IV, ¶ 35.

Gutierrez brings two causes of action against Santini and Stalka ("defendants").  First, Gutierrez claims that his Fifth Amendment and Fourteenth Amendment rights to due process were violated when (1) Santini delayed proper care for Gutierrez; and (2) Stalka refused to provide Gutierrez with an informal resolution form for use in the administrative remedy procedures.  Second, Gutierrez alleges that his Eighth Amendment right to be free from cruel

and unusual punishment was violated when (1) Santini, after observing Gutierrez's medical condition, prolonged medical attention; and (2) Stalka refused to provide to Gutierrez an administrative informal resolution form due to untimeliness.

Santini and Stalka seek to dismiss Gutierrez's claims on several grounds.  First, they argue that the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Gutierrez failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a).  Second, defendants argue that the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or the Complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) because Santini and Stalka enjoy qualified immunity.  Third, defendants argue that the Complaint fails to state a claim against Santini as a supervisor for want of personal involvement.  Fourth, defendants argue that the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) in a Bivens[3] action for the allegations against Stalka and Santini in their official capacities.  Lastly, defendants argue that summary judgment is appropriate because there is no genuine issue of material fact.  See Memorandum of Law in Support of Motion to Dismiss/Motion for Summary Judgment.  ("Defs.' Mem."), at 5.

## II.    STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments.  See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); see also Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In a facial challenge to

---

[3]    Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss. See Osborn, 918 F.2d at 729 n.6. The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction. See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n.6. On the other hand, in a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). See Titus, 4 F.3d 590 at 593; Osborn, 918 F.2d at 729 n.6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Osborn, 918 F.2d at 730 citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

Here, the defendants filed a motion to dismiss or for summary judgment. In support of their motion that Gutierrez's claim should be dismissed under Rule 12(b)(1) for failure to exhaust administrative remedies, defendants submitted the Declarations of Angela Buege and Michael Stalka and a number of exhibits. In response to defendants' motion, Gutierrez submitted several exhibits and made a variety of factual assertions. Defendants' challenge to jurisdiction has brought before the Court matters outside the pleadings. Therefore, they have presented a factual attack on the Court's jurisdiction to hear this case and this Court is free to weigh the evidence and satisfy itself that it has the power to hear the dispute. Osborn, 918

F.2d at 730. [4]

## III.  DISCUSSION

Gutierrez brought two claims against each defendant under the PLRA—one claim alleging violation of his Fifth Amendment and Fourteenth Amendment rights to due process and a second claim alleging violation of his Eighth Amendment right to be free from cruel and unusual punishment.  The PLRA requires a prisoner to exhaust all available remedies for claims relating to prison conditions.  In this case, all of Gutierrez's claims relate to prison conditions, including his due process claim against Stalka.[5]  Therefore, Gutierrez must establish that he has exhausted all administrative remedies for all claims.  In the event that Gutierrez has filed a mixed petition—i.e., filed a petition with exhausted and unexhausted claims—all his claims must be dismissed without prejudice, or he can be given the opportunity to proceed only with his exhausted claims.  In this case, the Court concludes that Gutierrez has filed a mixed petition; that is, he has filed a petition made up of exhausted claims and unexhausted claims.  Specifically, the Court finds that Gutierrez's claims against Gunderson and Santini were properly exhausted under the PLRA, despite the fact that they were not timely

---

[4]      As this Court is deciding defendants' motions solely on their challenge under Rule 12(b)(1), the Court only addresses the standard of review for a motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).

[5]      The Eighth Circuit has stated that the term "prison conditions" used within 42 U.S.C. § 1997e(a) is defined in 18 U.S.C. § 3626(g)(2), as follows:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2) (emphasis added).  See Castano v. Nebraska Dept. of Corrections, 201 F.3d 1023, 1024 n.2 (8th Cir. 2000).

filed under Bureau of Prisons ("BOP") rules and regulations, and that his claims against Stalka were not properly exhausted under the PLRA.   Therefore, this Court recommends that Gutierrez be given a choice: (1) Gutierrez may amend his petition to assert only his exhausted claims against Santini and Gunderson; or (2) the case will be dismissed so that he may exhaust his claim against Stalka and then file the entire suit again after completion of the exhaustion process.[6]

### A.     Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); see also McAlphin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000) (per curiam).   "The PLRA's exhaustion requirement is mandatory."   Robley v. Anderson, No. Civ. 02-4199 (JRT/RLE), 2004 WL 742089, at *2 (D. Minn. Mar. 4, 2004) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)) (citation omitted).   The requirement to exhaust administrative remedies also applies to all forms of relief sought. Booth, 532 U.S. at 741 n.6.

"Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before

---

[6]     The fact that defendants may practically be unable to offer any relief to rectify Stalka's alleged failure to give Gutierrez a form to informally grieve his claim at this time is of no matter under the PLRA's requirement of exhaustion of remedies.  Even futile exhaustion of remedies is required.  See Fudge v. May, 84 Fed.Appx. 702, 703, 2003 WL 22998106, at *1 (8th Cir. Dec. 19, 2003) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002) (stating administrative exhaustion is prerequisite to § 1983 prison-conditions lawsuit even if administrative remedies are not plain, speedy, and effective, and the relief an inmate seeks is not available)).

bringing suit in Federal court.'" Alexander v Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998) (quoting 141 Cong. Rec. H1472-06, *H1480 (daily ed. Feb. 9, 1995)); see also Robley, 2004 WL 742089, at *2 (quoting Thomas v. Woolum, 337 F.3d 720, 725 (6th Cir. 2003) ("The exhaustion requirement ensures that state prison systems will have an opportunity to handle prison grievances internally before recourse to the federal courts becomes available.").

The Eight Circuit held in McAlphin that in order to satisfy the requirements of § 1997e(a), a prisoner must allege in his complaint that he "exhausted all available administrative remedies" and "should attach to his section 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint." See McAlphin, 216 F.3d at 682 (citation omitted).   A plaintiff who does not present this evidence to the district court fails to satisfy his or her burden of showing that administrative remedies have been exhausted.  Such a complaint fails to state a claim upon which a court can grant relief and should be dismissed.  Id.[7]

The BOP provides a comprehensive administrative remedy procedure for federal inmates with grievances relating to their confinement.  In this regard, the Code of Federal Regulations prescribes a four-step administrative process for resolving complaints brought by federal prisoners: (1) the inmate must present his claim informally to an appropriate prison staff member; (2) if the claim is not resolved informally to the inmate's satisfaction, he must then submit a formal written Request for Administrative Remedy; (3) if the prisoner is not satisfied with the warden's response to that request, he must appeal to the Regional Director; and (4) if the prisoner is still dissatisfied, he must take a final appeal to the General Counsel in the Central Office in order to fully exhaust his administrative remedies.  28 C.F.R. §§ 542.10-

.16.  See also, BOP Program Statement 1330.13, Administrative Remedy Program. The initial

filing, i.e. the formal request to the institution, must be completed within 20 days following the

date of the event, which is the basis for the request.   28 C.F.R. §§ 542.14(a); Program

Statement 1330.13, Administrative Remedy Program, ¶ 8(a).

"When multiple prison condition claims have been joined, as in this case, the plain

language of § 1997e(a) requires that all available prison grievance remedies must be

exhausted as to all of the claims."   Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000).   In

Graves, the court held that dismissal was proper when at least some of the plaintiff's claims

were not fully exhausted.   Id.

### 1.      Gutierrez's Claims Against Stalka Are Unexhausted

With respect to Gutierrez's claim that Stalka refused to provide an informal resolution

form, defendants argue that Gutierrez did not exhaust this claim.   Defendants assert that

Gutierrez did not file any administrative remedy requests regarding Stalka or regarding the

denial of an informal resolution or an administrative remedy.   Buege Decl. ¶ 6. Defendants

further argue that Stalka did not hinder Gutierrez's access to the remedy program, and if

requested, he would have provided the requested forms to Gutierrez regardless of whether he

thought the complaint was timely. Stalka Decl. ¶ 2.  Defendants also assert that Gutierrez had

filed prior administrative remedy requests and knew how to use the remedy program.   See

Buege Decl., Attach. B.  In summary, defendants contend that because the Complaint contains

unexhausted issues, Gutierrez's case should be dismissed its entirety.

In opposition, Gutierrez asserts that his claim regarding Stalka was stated in the

---

[7]      Gutierrez did not attach to his Complaint evidence of the administrative disposition of
his grievances.  He did however submit this evidence with his response to defendant's motion.
As such, the Court concludes he has met the spirit and intent of McAlphin.

administrative remedy requests filed regarding his medical condition that were determined to be untimely. See Gutierrez Reply, Ex. A.[8]

The Court finds that Gutierrez did not exhaust his administrative remedies on his claims against Stalka because Gutierrez did not go through each of the four steps of the administrative remedy process prescribed in 28 C.F.R. §§ 542.10-.16 as to his claim against Stalka. After reviewing Exhibit A attached to Gutierrez's Reply, the Court finds that there was no mention of Stalka in Gutierrez's first form submitted on April 20, 2002. It was only on May 14, 2002, when Gutierrez submitted his appeal to the regional office that he mentioned Stalka for the first time. There, Gutierrez wrote: "An additional factor to consider is the fact that Informal remedies were not given by BOP correctional counselor, Mike Stalker, as a reason for rejection of this BP-9, as such this point is mute." Plaintiff's Reply, Ex. A (May 14, 2002 Regional Administrative Remedy Appeal). Gutierrez repeats this statement in Central Office Administrative Remedy Appeal. Plaintiff's Reply, Ex. A (July 22, 2002 Central Office Administrative Remedy Appeal). These statements regarding Stalka are an additional reason for Gutierrez's untimely filing of his grievances against Gunderson and Santini—not a stand-alone claim against Stalka that he had improperly rejected Gutierrez's request for an administrative informal resolution form due to untimeliness, as Gutierrez alleges in his Complaint. Compl. IV, ¶¶ 32-34. In sum, in order to properly assert a claim against Stalka, Gutierrez must exhaust his administrative remedies by going through each step of the grievance process established by the BOP. Until he does so, Gutierrez is precluded from asserting a claim against Stalka in this case.

### 2.     Gutierrez's Claims Against Santini Are Exhausted

---

[8]     Exhibit A to Gutierrez's Reply is a compilation of his requests for administrative remedy and rejection notices.

Defendants argue that Gutierrez has not exhausted his administrative remedies concerning Santini because Gutierrez did not present an administrative remedy request to the institution on a timely basis.  In this regard, his initial request regarding his coma condition was received by the institution on May 3, 2002.  Plaintiff's Reply, Ex. A.  Buege Decl. ¶ 6, Attach. B.  Gutierrez's request was rejected as untimely because he did not file his initial complaint within 20 days of the events that lead to the grievance; rather, the subject of the complaint occurred in October 2001, seven months prior to the request first being filed with the institution.  Even taking into account Gutierrez's medical condition and time needed for recovery, defendants argue that such a lengthy delay is not a circumstance that would excuse the untimely nature of the filing.

In response, Gutierrez asserts that he was on heavy medication and bedridden after his discharge from the inpatient hospital unit at FMC-Rochester on October 24, 2001.  Gutierrez also asserts that his mental faculties were not fully functional due to his serious medical condition.[9]  Lastly, Gutierrez argues that even though his requests were denied as untimely, he still filed them and therefore he exhausted his administrative remedies.

Based on the evidence presented, this Court rejects Gutierrez's suggestion that his medical condition precluded him from filing a grievance until May, 2002.  While the medical records submitted by Gutierrez address his treatment and condition in October 2001 and in 2003 and 2004, they do not speak of events or his condition in the time period between November 2001 and May 2002.  See Gutierrez Reply, Exs. B-D.  Thus, the only issue before the Court is whether his untimely filing of his initial grievance and subsequent appeals should

_____

[9]      Dr. Trung Tran, a physician at FMC-Rochester, issued a report on August 19, 2002, in which he stated that Gutierrez suffers from end stage liver disease with fatigue, forgetfulness

bar him from pursuing his claims against defendants in federal court.

The circuits that have addressed whether an untimely exhaustion of administrative remedies satisfies the PLRA's exhaustion requirement are split. The Third, Seventh, Tenth, and Eleventh Circuits have concluded that an untimely administrative appeal does not satisfy the PLRA's exhaustion requirement. The Sixth and Ninth Circuits have reached the opposite result, holding that an untimely administrative appeal does not preclude the claimant from pursuing his claim in federal court.

<blockquote>
a.   Holdings of the Third, Seventh, Tenth, and Eleventh Circuits—An Untimely Grievance Does Bar Federal Suit
</blockquote>

In Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), cert. denied, 537 U.S. 949, 123 S.Ct. 414, 154 L.Ed.2d 293 (2002), Pozo, a state inmate, brought a civil action challenging his conditions of confinement. Pozo properly filed an administrative complaint, but failed to appeal within the 10 days provided in the state system. Id. at 1024. Instead, Pozo waited one year to file his appeal, which was dismissed as untimely. Id.

The Seventh Circuit held that "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prisoner's administrative rules require." Id. at 1025. Because Pozo did not file a timely appeal, the Court concluded he had failed to exhaust his administrative remedies, and dismissed his federal suit. Id. at 1025. The court reasoned that "[a]ny other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem—or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner." Id. at 1023-24.

---

and pain. Dr. Tran opined that Gutierrez had a 25% chance of survival in 5 years, and could

In Ross v. County of Bernalillo, 365 F.3d 1181, 1182 (10th Cir.2004), Ross, a state prisoner, brought Eighth Amendment claims against counties and correctional facilities for injuries he sustained from a fall in a shower that occurred on November 29, 1999.  On December 1, 1999, Ross submitted an Inmate Grievance Form in which he complained about being transferred to administrative segregation and a "lack of medical treatment for serious injury to shoulder."  Id. at 1182-83.  Ross's grievance was rejected on grounds that it presented a non-grievable issue.  Id. at 1183.  After December 1, 1999, Ross did not seek to further invoke the prison's grievance process with respect to any alleged inadequate medical care. Id.  Rather, on December 6, 1999, Ross filed a Pre-Grievance Resolution Form to report his fall, to complain that the shower floor was unsafe, and to request that the problem be fixed.  Id. On December 8, 1999, the grievance officer responded to Ross that a shower mat had been placed in the shower where Ross fell.  Id.  In October 2000, Ross brought a lawsuit alleging two Eighth Amendment cruel and unusual punishment claims.  The first claim related to his slip in the shower—he alleged that defendants were responsible for maintaining an unsafe shower facility.   In his second claim, Ross alleged deliberate indifference to his medical needs because defendants failed to give him adequate treatment for his injuries.  Id.

The Tenth Circuit concluded that while Ross had exhausted his dangerous shower floor claim, he had not exhausted his medical treatment claims because most of the treatment he complained about in his suit occurred after he had filed the grievance alleging a lack of treatment.  Ross, 365 F.3d at 1184.  The appellate court held that because that conduct had never been brought to the attention of prison officials through the grievance process, the total

_____

die within one year with his current clinical progression.  Gutierrez Reply, Exs. C and D.

exhaustion rule applies,[10] and therefore, Ross's complaint was dismissed in its entirety without prejudice. Id.

The court reasoned that the purpose of the exhaustion requirement is to reduce the quantity and improve the quality of prisoner lawsuits. Ross, 365 F.3d at 1184 citing to Porter v. Nussle, 524 U.S. 516, 524 (2002).

> It is designed to achieve this purpose by 1) allowing prison officials an opportunity to satisfy the inmate's complaint, thus potentially obviating the need for litigation; 2) filtering out some frivolous claims; and 3) creating an administrative record that facilitates review of cases that are ultimately brought to court.

Id. citing to Porter, 524 U.S. at 524.

Analogizing to the habeas context where the Supreme Court has grafted a procedural default rule onto the habeas proceedings to ensure that the purposes of the exhaustion requirement were not defeated by a prisoner who let the time run so that state remedies were no longer available, the Seventh Circuit found that this same policy applies in the PLRA context. Ross, 365 F.3d at 1185-86. "Allowing prisoners to proceed to federal court simply because they have filed a time-barred grievance would frustrate the PLRA's intent to give prison officials the opportunity to take corrective action that may satisfy inmates and reduce the need for litigation, to filter out frivolous claims, and to create an administrative record that would facilitate subsequent judicial review." Id. at 1186.

In Spruill v. Gillis, 372 F.3d 218 (3rd Cir. 2004), a state prisoner brought a § 1983 action against various prison personnel, alleging deliberate indifference to his back condition. The central issue in this case was not, as here, the timeliness of filing a grievance or an

---

[10]     Under the total exhaustion rule, all claims must be exhausted before an inmate can proceed on any claim. Ross, 365 F.3d at 1188-89, citing to Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000).

appeal.  However, the court did discuss whether the PLRA requires simple exhaustion of remedies or a "proper" exhaustion—i.e., whether the PLRA's exhaustion requirement is a termination requirement or also includes a procedural default component as in the habeas context.  Id. at 228.

While expressing that there were problems with analogizing habeas cases which require timely exhaustion of administrative remedies, to prisoner civil rights cases,[11] the Third Circuit ultimately decided that "Congress's policy objectives will be best served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component." Spruill, 372 F.3d at 230.  The court reasoned that a procedural default component prevents an end-run around the exhaustion requirement, and creates an incentive for prisoners to pursue their claims to the fullest within the administrative grievance system.  Id.  Further, the court stated that such a rule ensures prisoner compliance with the specific requirements of the administrative grievance system, that an administrative record will be developed in the best

---

[11]     In discussing the less-than-perfect analogy, the court stated:

The analogy is far from perfect, though. For one thing, the Supreme Court has consistently located the procedural default component of federal habeas law in the "independent and adequate state ground" doctrine, see, e.g., Lee v. Kemna, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002); Coleman, 501 U.S. at 729, 111 S.Ct. 2546, a doctrine that, in the habeas context at least, "is grounded in concerns of comity and federalism," id. at 730, 111 S.Ct. 2546; see also Edwards v. Carpenter, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); Lambrix v. Singletary, 520 U.S. 518, 523, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). It is at least possible that the comity-and-federalism rationale (and hence the "independent and adequate state ground" rule) applies with greater force to defaults in state judicial proceedings than it does to defaults in state administrative proceedings. Another problem with uncritically importing principles from federal habeas doctrine into this context is that in other federal statutory schemes-most prominently, employment discrimination claims under the Age Discrimination in Employment Act (ADEA)-the Supreme Court has not interpreted an exhaustion-like requirement to imply a procedural default component.

fashion, and that the possibility of settlement will be explored. Id. Moreover, the court found

that a procedural default rule would reduce the federal court caseload of prisoner cases. Id.

In Johnson v. Meadows, No. 03-15636, 2005 WL 1718602, at *1 (11th Cir. July 26,

2005), on August 20, 1999, Johnson, a state prison inmate, brought a § 1983 action against

prison officials in federal court, alleging exposure to hazardous chemicals, harassment by

prison officials, and retaliation from prison officials. On February 20, 2001, Johnson's claim

was dismissed without prejudice for failure to exhaust administrative remedies. Id. Johnson

then filed an out-of-time administrative grievance in order to satisfy the exhaustion

requirement, but the Corrections Department denied his grievance as untimely filed because

the Georgia Prison Inmate Grievance Procedure requires that all grievances be filed "within

five (5) calendar days from the date that the prisoner discovers, or reasonably should have

discovered, the incident giving rise to the complaint and was able to file the grievance." Id.

Johnson appealed the decision, but the agency did not address Johnson's grievance because

it was untimely filed. Id. On July 18, 2001, Johnson filed another complaint in federal court,

and the Court found that Johnson had properly exhausted his administrative remedies. Id. at

*2. The Eleventh Circuit then granted permission for an interlocutory appeal to address

"[w]hether the PLRA's exhaustion requirement, codified in 42 U.S.C. § 1997e(a), requires

prisoners to meet timely the deadlines or the good cause standard of Georgia's administrative

grievance procedures before filing a federal claim." Id.

Relying on Spruill, Ross and Pozo, the Eleventh Circuit reversed the district court,

concluding "that an untimely filed grievance does not satisfy the exhaustion requirement of the

PLRA." Id. at *4. In addition to reciting the reasons stated by the Third, Seventh, and Tenth

Circuits, the appellate court noted that Johnson's untimely grievance did not comport with

Congress's intent that "prison officials have an opportunity to address the grievance internally and rule on the grievance before an inmate files a complaint in federal court . . . because Johnson did not request leave to file an untimely administrative grievance and did not assert good cause for his failure to file a timely grievance before he filed his federal complaint." Id. at *5. Further, because his grievance was untimely, prison officials did not review the merits of Johnson's complaint and therefore the purposes of § 1997e(a) were not achieved—"his grievance did not spur the corrective action that might have obviated the need for litigation, there was no filtering of potentially frivolous claims, and no development of an administrative record to assist the courts in deciding the controversy." Id. Based on this reasoning, the court held that "the PLRA's exhaustion requirement does contain a procedural default component: Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim." Id. at *6.

> b.    Holdings of the Sixth and Ninth Circuits—An Untimely Grievance Does Not Bar Federal Suit

In Thomas v. Woolum, 337 F.3d 720, 723 (6th Cir. 2003), a state inmate sued a corrections officer who beat him and other officers who were present when the beating took place. The incident occurred on November 5, 1997, but the prisoner did not file a grievance form to report the incident until May 4, 1998. Id. The grievance was denied because it was not filed within the thirty-day period required by the Department of Rehabilitation and Correction policy. Id. at 724. Subsequently, the prisoner appealed as far as he could within the internal prison system, but the grievance was denied as untimely. Id. at 727. The Sixth Circuit held that "a prisoner who has presented his or her grievance through one complete round of the prison process has exhausted the available administrative remedies under 42 U.S.C. § 1997e(a), regardless of whether the prisoner complied with the grievance system's procedural

requirements." Id. at 733.  Accordingly, the court held that the prisoner's untimely grievance did not bar him from pursuing his claim in federal court.  Id. at 723.

The court articulated several reasons for its holding.  First, after acknowledging that parts of the PLRA are designed to ease the burden that meritless prisoner lawsuits impose on state law-enforcement officials and the federal docket, the court found that nothing suggests that a goal of the Act, and specifically, of the exhaustion requirement, was to defeat valid constitutional claims.  Id. at 726.  The PLRA's exhaustion provision is "'an accommodation of our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"  Id. at 726 (citing Picare v. Connor, 404 U.S. 270, 275 (1971)).

> It is not, however, designed, to permit state administrative timelines to handcuff the federal courts in adjudicating cases involving important federal rights. Accordingly, the PLRA does not contain any language regarding the timeliness of grievance filings or the application of procedural default; if the state forgoes an opportunity to decide matters internally whether for internal time restraints or any other reason, the PLRA has nonetheless served its purpose, and the prisoner may proceed to federal court.

Id. at 626.

Second, the Sixth Circuit found there are distinctions between the habeas process and the administrative grievance process that warrant different treatment between the two— namely, "[t]he notions of comity that prevent federal courts from unduly interfering with the state criminal judicial process in the habeas context do not have precisely the same resonance and intensity when federal courts are analyzing the outcome of a non-criminal state administrative process and when § 1983 interposes the federal courts as a vindicator of federal rights." Thomas, 337 F.3d at 728 n.2.  As the court later explained:

> The judiciary created the procedural default rule to ensure that courts did not issue advisory opinions when an independent and adequate state ground supported a state court's judgment, and extended the rule into the habeas

18

context only because "a state prisoner is in custody pursuant to a judgment" that would be rendered ineffective by a federal court's ruling. This extension of the procedural default rule into the habeas context obviously cannot support its extension into exhaustion of prison administrative remedies, as we have never considered a state warden's decision on a grievance to be the equal of a full state-court judgment. Indeed, the Supreme Court's habeas decisions instruct that, whereas the procedural default doctrine requires a habeas petitioner to comply with reasonable state procedural rules, the exhaustion requirement requires that "state prisoners ... give the state courts one full opportunity to resolve any constitutional issues by invoking one compete round of the's established appellate review process."

Id. at 731-32 (citation omitted).

Third, relying on the Supreme Court's holding in Oscar Mayer & Co. v. Evans, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) and EEOC v. Commercial Office Products Co., 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988), the Sixth Circuit reasoned that if a plaintiff's failure to comply with a state's statute of limitations in the context of Title VII and ADEA cases[12] could not prevent a plaintiff from bringing a discrimination case under these statutes in federal court, then "they should not be able to defeat a claim under the Civil Rights Act of 1871, Congress's preeminent declaration that state officials may not undermine federal law." Thomas, 337 F.3d at 729. Additionally, the Sixth Circuit stated that Congress could have required more than an exhaustion requirement in the PLRA by explicitly stating that "untimely claims shall be deemed to be procedurally defaulted." Id. at 731. Having chosen not to do so, the court would not impose such a requirement. Id. at 731.

Finally, the Sixth Circuit rejected the policy argument articulated by the Seventh Circuit in Pozo, 286 F. 3d at 1025—that if prisoners know that they may file a federal suit despite the filing of an untimely grievance, prisoners will have an incentive to "bypass the prison grievance

---

[12]     Both the ADEA and Title VII require plaintiffs to present their grievances in the relevant state system before the plaintiff can initiate a federal suit. Thomas, 337 F. 3d at 728, citing 29 U.S.C. § 633(b) (ADEA); 42 U.S.C. § 2000e-5(c) (Title VII).

process by waiting until its deadline has passed, filing an untimely grievance, and then proceeding to federal court." Thomas, 337 F. 3d at 732.  The court found that this argument not only ignored the meaning of exhaustion, but was specifically rejected in Oscar Mayer when the Supreme Court stated: "'[p]rior resort to the state remedy would not impair the availability of the federal remedy, for the two are supplementary, not mutually exclusive.'" Id. citing Oscar Mayer, 441 U.S. at 764.  In the view of the Sixth Circuit, potential litigants will still have every incentive to submit their grievance within the prison's timelines because it is within the prison's process that inmates will most often receive "their swiftest and most effective remedies. Those who bypass it will generally do so to their own disadvantage." Thomas, 337 F. 3d at 732.[13]

In Ngo v. Woodford, 403 F.3d 620, 622 (9th Cir. 2005), Ngo, a state inmate brought a § 1983 claim because, as a condition of release from administrative segregation in December 2000, he was restricted from participating in "special programs" (such as evening fellowship and Bible study sessions) and was prohibited from corresponding with a former Catholic Chapel volunteer. Id.  On June 18, 2001, Ngo appealed the disciplinary action, but his appeal was rejected as time-barred because he had not filed the appeal within fifteen working days of the incident, as required by California law. Id.  Six days after this rejection, Ngo filed a second grievance contending his appeal was timely on grounds that the violations were continuing. Id.   The appeal was again rejected on timeliness grounds, and then Ngo file his § 1983 action in federal district court. Id.

To appeal a state prison's administrative decision, a California inmate must go through

---

[13]      In fact, the court found that the policy argument worked in favor of the conclusion it had reached: "prison administrators, knowing that their refusal to entertain grievances filed after certain deadlines will not protect them from subsequent litigation, will more likely take advantage of the opportunity to resolve the grievance that the PLRA has granted them."

a four-step process.  Ngo, 403 F.3d at 624.  The first step requires the inmate to file an

"informal" appeal within 15 working days of "the event or decision being appealed."  Id.  At the

second step, an inmate may file a first formal appeal with the Appeals Coordinator within 15

days.  Id.  The Appeals Coordinator may reject an appeal for exceeding time limits, and the

regulations do not provide for review of an appeal at a higher administrative level if it has first

been rejected on a procedural ground.  Id.  However, a prisoner may file a challenge with the

Appeals Coordinator if he feels the procedural ground was inaccurate.  Id.  The Ninth Circuit

found that Ngo had exhausted all available administrative remedies at the second step and

that he was not procedurally barred from pursuing his suit in federal court.  Id. at 625. 631.

> In reaching this decision, the Ninth Circuit stated:
>
> Ngo exhausted all administrative remedies available to him as required by the
> PLRA when he completed all avenues of administrative review available to him:
> His administrative appeal was deemed time-barred and no further level of
> appeal remained in the state prison's internal appeals process. We also hold
> that the PLRA's exhaustion requirement does not bar subsequent judicial
> consideration of an exhausted administrative appeal that was denied on state
> procedural grounds.

Ngo, 403 F.3d at 631.

Like the Sixth Circuit in Thomas, the Ninth Circuit reasoned that the PLRA's exhaustion

requirement was not analogous to habeas exhaustion (with its court-imposed procedural

default component), but more closely resembled administrative exhaustion found in the ADEA

and Title VII (which do not include a procedural default component). Ngo, 403 F.3d at 627-30.

 The appellate court found that the PLRA's exhaustion requirement was not analogous to

habeas exhaustion for several reasons.  First, state sovereignty is less threatened when a

federal court reviews "a non-criminal state administrative process" for violations of

constitutional rights compared to when a federal court reviews a collateral attack on a

Thomas, 337 F. 3d at 732.                                    21

sovereign state court's judgment. Id. at 628.  Second, the PLRA does not mention procedural default or indicate an intent to bar suits by prisoners who fail to meet administrative time requirements mandated by prisons.  Id.  Third, unlike 28 U.S.C. § 2254, the PLRA does not instruct federal courts how to treat administrative findings.  Id.

In finding that PLRA's exhaustion requirement was more like that found in the ADEA and Title VII, the Ninth Circuit acknowledged that exhaustion in the administrative context shares similar objectives to that in the habeas arena: it protects an administrative agency's authority, promotes judicial efficiency by allowing the agency the opportunity to correct its mistakes, and allows the agency to create a record which might facilitate judicial review.  Ngo, 403 F. 3d at 629.  Nevertheless, despite these goals, given the Supreme Court's determination that administrative exhaustion did not include a procedural default mechanism in cases under the ADEA and Title VII,[14] the court was reluctant to impose such a sanction in the absence of any statutory direction to do so, and particularly where "such a scheme would penalize the less sophisticated and less informed who are unable to satisfy complex and demanding procedural requirements, regardless of the merits of their claims."  Id. at 629-30.

After considering the analyses articulated by the various circuits, this Court finds the reasoning of the Sixth and Ninth Circuits to be persuasive.  As a preliminary matter, the Court notes that there is no challenge to any state court judgment at issue in this case. In fact, unlike all of the cases discussed above, Gutierrez is a federal prisoner sentenced by a federal court.  Thus, as the court in Thomas observed, "[t]he notions of comity that prevent federal courts from unduly interfering with the state criminal judicial process in the habeas context" do not come into play here at all.   Thomas, 337 F.3d at 728 n.2.  This is not a situation where a state

---

[14]     See EEOC v. Commercial Office Products, 486 U.S. 107, 108 (1988); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 759 (1979).

court must be given the "first opportunity to correct its errors."  Ngo, 403 F.3d at 628.

Consequently, the underlying rationale for adopting the procedural default doctrine in the

habeas context does not carry over to the situation presented here.

Further, unlike habeas proceedings, which explicitly provide a standard of review for

collateral re-examination of state court rulings on issues of fact and law, (see 28 U.S.C.

§ 2254(d)), nothing in the PLRA directs federal courts to defer to such rulings by state or

federal prison administrators.  Ngo, 403 F.3d at 628.  To the contrary, given the nature of a

prison grievance proceeding—adjudicators (prison grievance administrators) are not judges,

are not necessarily trained in the law and cannot enforce constitutional rights or award

damages, and the standards governing suits in federal and state courts are not necessarily

followed during a prison grievance proceeding—"[s]imply put, a prison's administrative

grievance proceeding can in no way be the "main event" in a prisoner's attempt to have a

constitutional violation redressed." Id. (emphasis in original).  See also Thomas, 337 F.3d at

731-32 ("The extension of the procedural default rule into the habeas context obviously cannot

support its extension into exhaustion of prison remedies, as we have never considered a state

warden's decision on the grievance to be the equal of a full state-court judgment.").

In addition, there is no language in the PLRA or even the regulatory scheme adopted by

the BOP, (see 28 C.F.R. §§ 542.10-.16 and Program Statement 1330.13), that indicates any

intent by Congress or the BOP to bar suits by prisoners who fail to meet the timeline

requirements for filing grievances.  In fact, neither the regulations nor the Program Statement

inform prisoners that their suits will be barred if they do not comply with the stated timelines.

Lacking such direction or notification, this Court is reluctant to graft such a result onto the

PLRA.

Further, the Court finds that refusing to bar litigation by a prisoner who fully exhausts his administrative remedies is not contrary to the purposes of the PLRA, nor will it encourage prisoners to purse untimely claims in federal court.

As the Court stated in Thomas:

> If Thomas had failed to file, the state prison system would never have had any opportunity to review the claim. However, by filing, Thomas gave the state an opportunity to hear the claim and, by appealing, Thomas gave the state the opportunity to reconsider its decision. Thomas received the benefit of the potential that the state would hear his grievance by waiving the procedural guidelines, which the state could have done if it wanted to avoid federal court. The state received the benefit of dealing with the case internally if it so desired.

Id. at 727.   In this case, Gutierrez filed his administrative remedy forms and appealed the responses to his grievances all the way up through the administrative system.  If the purpose of the PLRA is to ensure prisoner compliance with the specific requirements of the administrative grievance system, to develop a full administrative record, to explore settlement, and to reduce the federal court caseload of prisoner cases, (see Spruill, 372 F. 3d at 230), not one of these objectives was negated by Gutierrez's untimely filing of his grievance.  So long as the prisoner files his grievance and exhausts all of the appeals, the purposes of the PLRA have been served.

Lastly, and perhaps most importantly, this Court rejects the concept of a procedural bar to pursuing an untimely-filed grievance in a Bivens suit because it is inconsistent with the statute of limitations governing this action and the Supreme Court's articulation of the need for consistency in the application of statute of limitations to prisoner suits.

This case is a Bivens action.[15]  Bivens actions are governed by the same statute of

---

[15]   While Gutierrez pled this case as a § 1983 claim, as defendants recognize, because defendants are federal actors and not state actors, this case is properly characterized as a Bivens action.  Defs.' Mem., at 3.

limitations as § 1983 actions.  Sanchez v. United States, 49 F.3d 1329, 1330 (8th Cir. 1995).

Accordingly, because Minnesota's six-year statute of limitations for personal injuries governs §

1983 claims, the same six-year statute of limitations applies to Gutierrez's Bivens suit.[16]

Wilson v. Garcia, 471 U.S. 261, 279 (1985); Sanchez, 49 F. 3d at 1330.

Yet, if this Court were to hold that Gutierrez is barred from pursuing his case because

he failed to file his initial grievance within 20 days of the events described in the grievance, it

would nullify the benefit conferred upon him by Minnesota's six-year statute of limitations.

As the court in Thomas explained regarding the statute of limitations:

> That Congress has instructed us to borrow a state's statute of limitations on
> personal injury actions in no way implies that we should borrow a state prison's
> administrative deadlines. The two deadlines serve very different purposes;
> whereas a state legislature's incentives in setting its personal injury statute of
> limitations will be well balanced, a state prison's incentives in setting a time limit
> on inmate grievances--especially if the limit would insulate prison officials from §
> 1983 suits--would likely lead to shorter and shorter limitations periods.
> Compare, e.g., Kentucky Corrections Policy 14.6(VI)(J) (requiring aggrieved
> inmate to file grievance within five days, and appeal within three days), with
> Collard v. Kentucky Bd. of Nursing, 896 F.2d 179, 182 (6th Cir.1990)
> (recognizing statute of limitations for § 1983 actions at one year for those in
> Kentucky's general population). Although state officials may have legitimate
> reasons for imposing deadlines on inmate grievances, there is no reason that a
> prison's legitimate interest in, for example, conserving investigative resources
> must prohibit federal court jurisdiction.

Thomas, 337 F.3d at 729.

The Supreme Court explicitly has held in order to end "conflict, confusion and

uncertainty", federal courts should apply state statute of limitations for personal injury actions to

prisoner suits.  See Owens, 488 U.S. at 576, citing Wilson v. Garcia, 471 U.S. 261, 275

---

[16]     In this regard, the United States Supreme Court has held that "where state law provides
multiple statutes of limitations for personal injury actions, courts considering section 1983
claims should borrow the general or residual statute for personal injury actions." Owens v.
Okure, 488 U.S. 235, 249 (1989). See also, Helleloid v. Indep. Sch. Dist. Number 361, 149
F.Supp.2d 863, 867 (D. Minn. 2001) (holding that '[i]n Minnesota, the six-year statute of

(1985).  Having committed to apply state statute of limitations to prisoner actions in the "interest of uniformity, certainty and minimization of unnecessary litigation", (Owens 488 U.S. at 576, citing Wilson, 471 U.S. at 275), it is unlikely that the Supreme Court would then conclude that a prisoner who followed the dictates of the PLRA and exhausted his administrative remedies, was still barred from seeking relief for violations of his constitutional rights because he did not file his grievance within the 20 days required by prisoner regulations.

In summary, this Court finds that all that the PLRA requires is exhaustion of administrative remedies so that prison officials will have the first shot at resolving prisoner matters before the federal court entertains jurisdiction over the dispute.  The PLRA does not prescribe timelines, nor do the PLRA or the BOP's regulations state that failure to follow the various timelines set by the prisons around the country shall forever foreclose a prisoner from pursuing his claim in federal court.  While there are many good reasons for giving prisoners deadlines to present their claims and pursue their appeals (e.g encourages quick investigation and resolution of disputes), there is nothing in the PLRA to suggest that preclusion of untimely claims is necessary to accomplish its many objectives.

For all of these reasons, the Court finds that Gutierrez fully exhausted his administrative remedies with respect to his claims against Santini as required by the PLRA, and that his failure to meet the time requirements set forth in 28 C.F.R. §§ 542.14(a) does not preclude him from pursuing his claims in federal court.

### B.   Conclusion

In conclusion, the Court finds that Gutierrez's claims against Santini have been exhausted, but the claims against Stalka have not.  Therefore, faced with both exhausted and

limitations, which is found in Minn. Stat. § 541.05, applies to 42 U.S.C.S. § 1983 claims") (applying Owens, 488 U.S. at 249).

unexhausted claims, Gutierrez has two choices: One option is that he can file an amended petition that includes only his exhausted claims against Santini and Gunderson. <u>See Kozohorsky v. Harmon</u>, 332 F.3d 1141, 1144 (8th Cir. 2003) ("We think that the rule permitting a plaintiff to file an amended petition, which includes only exhausted claims, is applicable here."). In the alternative, this case may be dismissed without prejudice, so that Gutierrez may exhaust his claims against Stalka, and then he can re-file the entire suit against all defendants after completion of the exhaustion process.[17] Therefore, this action will be dismissed without prejudice, unless Gutierrez files within fourteen (14) days from the date of the Court's Order adopting this Report and Recommendation, an amended petition to state only claims against Dr. George Santini.

## **RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that this action be dismissed without prejudice, unless Gutierrez files within fourteen (14) days from the date of the Court's Order adopting this Report and Recommendation, an amended petition to state only claims against defendant Dr. George Santini.

Dated:              August 10, 2005

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[17]      Minnesota law allows Gutierrez six years to timely file his Complaint. <u>See, e.g., Helleloid</u>, 149 F.Supp.2d at 867 (holding that "[i]n Minnesota, the six-year statute of limitations, which is found in Minn. Stat. § 541.05, applies to 42 U.S.C.S. § 1983 claims"). According to <u>Sanchez</u>, even though Gutierrez's claim is a <u>Bivens</u> action, the six-year statute of limitations that applies to a § 1983 claim applies to Gutierrez's <u>Bivens</u> claim. <u>Sanchez</u>, 49 F.3d at 1330 (holding that <u>Bivens</u> actions are governed by the same statute of limitations as § 1983 actions).

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 29, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.